**In re VERMONT REAL ESTATE INVESTMENT TRUST, Debtor.**

**Bankruptcy No. 82-00033.**

United States Bankruptcy Court, D. Vermont.

Jan. 26, 1983.

William E. Mikell, William Alexander Fead, Burlington, Vt., for Shareholders' Committee.

W. Wyman Smith, Chairman of The Bd. of Trustees, John L. Primmer, St. Johnsbury, Vt., for Bd. of Trustees of Vt. Real Estate Inv. Trust.

Douglas J. Wolinsky, Burlington, Vt., for Committee of Unsecured Creditors.

Ronald A. Fox, Montpelier, Vt., for Charles E. Crowell.

Hiram S. Hunn, Plainfield, Vt., for Cody Mgt. Ass'n, Inc.

## MEMORANDUM AND ORDER

CHARLES, J. MARRO, Bankruptcy Judge.

The Motion of William E. Mikell, Esquire, attorney for the Shareholders' Committee, for interim compensation and expenses came on for hearing, after 20 days' notice to creditors and parties in interest. He seeks compensation for $12,046.50 and expenses of $816.69 for services rendered and expenses incurred by him and his associate, William Alexander Fead, Esquire, for the period from May 28, 1982 to September 30, 1982. The allowance of this compensation and expenses was supported by W. Wyman Smith, Esquire, Chairman of the Board of Trustees of Vermont Real Estate Investment Trust, and by John L. Primmer, Esquire, attorney for other trustees of this real estate investment trust.

On the other hand, it was opposed by Douglas J. Wolinsky, Esquire, as attorney for the Committee of Unsecured Creditors;

by Ronald A. Fox, Esquire, as attorney for Charles E. Crowell, alleged unsecured and priority creditor, and by Hiram S. Hunn, Esquire, as attorney for Cody Management Association, Inc., the lessor of certain property to the Debtor.

On May 19, 1982 the Court entered an Order, pursuant to an Application, appointing a Shareholders' Committee and on June 29, 1982 the Applicant, pursuant to an Application by the Shareholders' Committee, was appointed as attorney for this committee.

From June 28, 1982 through September 3, 1982 the Applicant did file a substantial number of claims in behalf of shareholders in which the shareholders allege that they were actually unsecured creditors. On August 18, 1982 the Applicant filed an Application for Leave to Withdraw as Attorney for the Shareholders' Committee and on the same day the Debtor, through its new trustees, filed an Application for the Approval of the Appointment of William E. Mikell, Esquire, as attorney for the debtor. There was objection to this Application and the Court did not approve this appointment on the grounds that there appeared to be a conflict of interest. Under § 1103(b) a person employed to represent a committee in a Chapter 11 Proceeding may not, while employed by such committee, represent any other entity in connection with the case. The appointment of William E. Mikell, Esquire, as attorney for the Shareholders' Committee was made pursuant to § 1103 of the Code. His Motion for Interim Compensation is predicated on § 331 of the Code which permits any professional person employed under § 1103 to apply to the Court no more than once every 120 days after an order for relief in a case, or more often if the court permits, for such compensation for services rendered before the date of such application or reimbursement for expenses incurred before such date.

The Applicant's Motion for Attorney's Fees and Expenses is excellently prepared, first pointing out his qualifications and that of his associate, William Alexander Fead, Esquire, and then itemizing in great detail the nature of the services performed and the time spent on each item. The Court is satisfied that both the Applicant and his associate are eminently qualified and that they did in fact perform legal services in this proceeding with a high degree of professionalism and dedication. The Court also feels that the hourly rates of $75.00 and $60.00 charged for services rendered by the Applicant and his associate, respectively, are reasonable.

Up to the present time, this Court has been hesitant in allowing interim compensation for the reason that most cases are terminated within a reasonable time in this jurisdiction and there has been a tendency for most Chapter 11 Reorganization cases to abort. Under such circumstances, it could very well be that there would be insufficient funds to pay the administration expenses incurred in the Chapter 11 Proceeding after payment of those arising under Chapter 7 liquidation.

Chapter 7 administrative expenses have priority over those incurred under Chapter 11. § 726(b); 4 Collier 15th Ed. § 726.03 pages 726–10. The end result would be that any interim compensation allowed and paid would have to be refunded or at least a prorata share would have to be paid back resulting in additional burden on the Bankruptcy Court and parties involved by way of administrative procedures.

The Court recognizes that allowances of interim compensation are based, in part, upon the premise that professionals should not be expected to finance the administration of liquidation or reorganization cases. 2 Collier 15th Ed. 331–3. This was aptly pointed out by U.S. Bankruptcy Judge John J. Galgay in his Certificate on Application for Interim Allowances in Franklin New York Corp., No. 74–B–1428, (S.D.N.Y.) as follows:

"In [liquidation] cases such as this, it seems to me that it is an injustice to the Court appointed professionals (attorneys, accountants, trustees) to expect them to perform high quality services, often under great pressure involving extremely complex factual and legal issues and then

compel them to wait many years before receiving any compensation. Practicing law in the competitive atmosphere of New York City is sufficient challenge without requiring them to be bankers as well."

Concededly, the Queen City of Burlington in which the Applicant practices does not rival the "Big Apple" in size but it does not lack for spirited competition in the legal profession. Therefore, there is no reason why the same rule as to interim compensation should not apply.

With this background the Court now turns to the merits of the Applicant's Motion and for a determination of the amount that should be allowed as compensation for services and expenses. § 1103(c) defines a wide spectrum of services which a committee appointed under § 1102 (this includes a shareholders' committee.) may perform including the following:

"(1) consult with the trustee or debtor in possession concerning the administration of the case;

"(2) investigate the acts, conduct, assets, liabilities, and financial conditions of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

" . . . (5) perform such other services as are in the interest of those represented."

It has been held that counsel for creditors are entitled to compensation for legal services which facilitate progress of and substantially aided formulation and adoption of a plan of reorganization provided that such services foster and enhance, rather than retard or interrupt, the progress of reorganization. However, legal services which are provided solely for client as creditor, such as those rendered in prosecuting a creditor's claim are not compensable. *In Re Richton International Corporation,* 5 CBC2d, 1019, 15 B.R. 854 (Bkrtcy.1981).

*Richton* seems to be a departure from the rule, consistently followed by the Bankruptcy Courts, that a professional is not entitled to compensation for services rendered without prior approval by the Court. *In re McAuley Textile* (Bkrtcy.D. Maine 1981) 11 B.R. 646; *In Re Mork* (Bkrtcy.D.Minnesota 1982) 19 B.R. 947; *In Re Morton Shoe Companies, Inc.* (Bkrtcy.D. Mass.) 22 B.R. 449; *In Re American Trawler Corporation* (Bkrtcy.D.Maine 1982) 24 B.R. 505. The necessity of strict compliance with this rule was enunciated in the case of *In Re Garland Corporation* (Bkrtcy. D.Mass.1981) 8 B.R. 826, 828, as follows:

"There is one absolute basic condition precedent to any fee application. There must be Court authorization prior to the services being rendered for both the person and the services. That counsel cannot be paid for unauthorized services rendered is a hard and fast, albeit somewhat harsh to the ignorant volunteer, rule of bankruptcy law, made necessary if the Court is to maintain control of costs. See Bankruptcy Rule 215; 11 U.S.C. § 328; *In re J.M. Wells, Inc.,* 575 F.2d 329, 4 BCD 473 (1st Cir.1978); In *Matter of Sapphire Steamship Lines, Inc.,* 1 BCD 408 (2nd Cir.1975) aff'd sub nom., *In Matter of American Express Warehousing, Ltd.,* 525 F.2d 1012, 2 BCD 59 (2nd Cir. 1975), where the Court denied compensation to counsel who produced $800,000 by doing work of the Trustee because he was not authorized to do such work."

This Court as early as 1979 indicated its approval of the foregoing rule. *In Re J & S, Inc.,* (D.Vermont) 19 CBC 822, 826–7.

An examination of the Applicant's charges shows that he has itemized services aggregating 2.9 hours from May 28, 1982 to June 29, 1982 (the date of Court approval of his appointment as attorney for the Shareholders' Committee). Under the above cited cases payment for this time should be disallowed.

As to the remaining services aggregating a total of 56.2 hours by Attorney Mikell, 125.1 hours by Attorney Fead and 3.6 hours for Law Clerk Massonneau, if there is to be any allowance of compensation, the Applicant must meet the test of the Richton case, supra. Clearly he is not entitled to any

compensation on the basis of his Application to be appointed attorney for the debtor for the reason that this was never approved by the Court.

If the Applicant does bring himself within the purview of the Richton case the Court must then determine which services rendered by him as attorney for the Shareholders' Committee benefited the Debtor's estate; i.e., facilitated progress of and substantially aided the formulation and adoption of a plan of reorganization. In addition, since administrative expenses in an ensuing Chapter 7 liquidation (if the Chapter 11 Proceeding aborts) have priority over those in Chapter 11, the Court must determine whether payment should be made at this time. At least one Bankruptcy Court has held that payment of interim compensation should be delayed until all administrative claims were determined and the Court ascertained if proration among administrative claims was required. *In Re Robbin Industries, Inc.,* (Bkrtcy.N.D.Georgia 1982) 16 B.R. 695.

■ The Applicant has made a strong case for the payment at this time of any interim compensation allowed. The Court feels that he is entitled to this consideration subject to the proviso that he will reimburse the Estate for any sum for which he is chargeable in the event that pro-ration of administrative expenses becomes necessary by conversion of this proceeding to a Chapter 7 liquidation or because of insufficient funds with which to pay all Chapter 11 administrative costs.

An examination of the charges itemized leads the Court to conclude that the Applicant performed such services as an attorney for the debtor would furnish it under a general retainer. Compensation for all of such services are not compensable since his appointment in this capacity was not approved by the Court. Accordingly, it is necessary for the Court to determine whether the Applicant should be paid on any other basis.

■ Under the Richton case, supra, the Applicant is entitled to compensation as attorney for the Shareholders' Committee for such legal services as tend to foster and enhance, rather than retard or interrupt, the progress of reorganization. See also *In Re Interstate Stores, Inc.,* 1 B.R. 755 (Bkrtcy.N.Y.1980). This Court, in *International Coins & Currency, Inc.,* No. 81–00023, not yet reported, did approve such compensation to an attorney for a secured creditor in that Chapter 11 Proceeding. The Applicant, as an approved attorney for the Shareholders' Committee, is entitled to the same consideration.

■ Two of the matters which are principally involved in the plan of reorganization are those which relate to the Cody Block lease and the Spaulding mortgage. The Applicant's itemization indicates that he spent 17.4 hours, his associate expended 55.5 hours, and the legal clerk contributed 3.0 hours rendering legal services relating to these matters. At the charges of $75.00, $60.00 and $30.00, respectively, the total amount to which the Applicant is entitled for such services as contributing to the progress of reorganization is $4,725.00.

If Attorney Mikell is to receive compensation for the remaining services he is required to bring himself within the scope of those enumerated under § 1103(c). Although these, as pointed out by the Court, include a wide range, the Court is not satisfied that the services rendered all come within the purview of § 1103(c).

It is also noted that at certain hearings both the Applicant and his associate appeared and duplicate charges were made. Although the Applicant has alleged in his Motion that no services rendered to the Shareholders' Committee or any of the shareholders individually are included in the Application it is difficult for the Court to come to this conclusion from reviewing the itemization of services. The Court does not question the integrity of either the Applicant or his associate whom the Court feels are attorneys of great integrity. On the other hand, if no services rendered the Shareholders' Committee are included in the Application, they would not come within those recited under § 1103(c) and would

not be compensable. Further, it is difficult for the Court to ascertain whether some of the services rendered were actually for the benefit of the shareholders. In view of the anomalous situation, the Court feels that the following is the most equitable resolution of the Applicant's Motion for compensation and expenses: (1) Deduct the sum of $217.50 for services rendered before the appointment of the Applicant as attorney for the Shareholders' Committee from the total of $12,046.50 requested. (2) As to the balance of $11,829.00 the Applicant is allowed $4,507.50 for legal services contributing to the reorganization plan. (3) As to the balance of $7,321.50 the Applicant is to be allowed one-half thereof to be added to the prior allowance of $4,507.50 making a total of $8,168.25 as an allowance for legal services. The Applicant is also entitled to out-of-pocket expenses of $816.69.

Although interim compensation is payment on account of ultimate final allowance and is subject to the Court's re-examination and adjustment during the course of the case [1], this Court is hereby, in order to save further time and consideration, making a determination that the amount being allowed is reasonable and is not subject to further examination by the Court.

### ORDER

Upon the foregoing,

IT IS ORDERED as follows:

1. William E. Mikell, Esquire, attorney for the Shareholders' Committee, is allowed the sum of $8,168.25 and expenses of $816.69.

2. The Debtor is directed to make payment of these sums within ten days of the date of this Order.

3. In the event that it is later determined that there are insufficient funds with which to pay all administration expenses incurred in this Chapter 11 proceeding or to pay all of the administrative expenses which may occur in a Chapter 7

liquidation if this case is converted to Chapter 7, then the Applicant shall be obliged to pay over to the Debtor or the trustee such pro-rata share of such sums received by him under this Order as are chargeable to him under the applicable provisions of the Bankruptcy Code.

---

1. *In Re Pennsylvania Tire and Rubber Company of Mississippi, Inc.,* 19 B.R. 124 (Bkrtcy.Ohio 1980).