**In re MED GENERAL, INC., a Minnesota corporation, Debtor.**

**Bankruptcy No. BKY 4–80–584(O).**

United States Bankruptcy Court, D. Minnesota.

March 11, 1981.

Howard A. Patrick, Minneapolis, Minn., appeared on behalf of the application, and the United States Trustee.

William P. Westphal, Minneapolis, Minn., having filed objection, appeared in opposition.

## ORDER

KENNETH G. OWENS, Bankruptcy Judge.

A hearing was held inter alia on February 4, 1981 on the application of Robins, Zelle, Larson & Kaplan (formerly Robins, Davis & Lyons) by Howard A. Patrick.

Mr. Patrick and the mentioned law firm were retained prior to the commencement of this reorganization case incident to the

debtor's out-of-court dealings with its creditors. In that connection, an informal committee of general creditors was established and employed the law firm as its counsel. There was considerable activity by that committee and its counsel and following the commencement of this reorganization case seven of its original nine members were appointed to the official creditors' committee by the United States Trustee. The successor committee continued its representation and similarly employed Mr. Patrick and the law firm with which he is associated. While the application is made purportedly by counsel for the official creditors' committee for consideration under Section 330(a)(1) of the Bankruptcy Code its allowance necessarily relies as to pre-petition services on Section 503(b)(3) for its allowance.

The objection is made that there is no provision in the Code for the payment of attorneys' fees to attorneys for pre-petition unofficial creditors' committees. Section 503 of the Code provides that after notice and hearing, there may be allowed:

"(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—"

    \*    \*    \*    \*    \*    \*

"(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—"

    \*    \*    \*    \*    \*    \*

"(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or"

Subpart (D) might be permissibly read as referring only to those committees representing creditors active after the commencement of the bankruptcy case. It is clear however that the managers of the legislation did not intend such a restriction. In their joint statement, they indicated: "Section 503(b)(3)(E) codifies present law in cases such as *Randolph v. Scruggs*, 190

U.S. 533, [23 S.Ct. 710, 47 L.Ed. 1165] which accords administrative expense status to services rendered by a prepetition custodian *or other party* to the extent such services actually benefit the estate. (124 Cong.Rec. H 11,094–5 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978)." (emphasis added).

The 1898 Bankruptcy Act made no specific provision for payments as items of administrative expense with respect to any activity prior to the petition initiating the case. However, as early as *Randolph v. Scruggs* decided shortly after the inception of the modern Bankruptcy Act, the Supreme Court determined that pre-petition activities which directly benefited or tended to preserve the estate of the debtor could claim entitlement to treatment as expense of administration. That case has been recognized and applied in this Court frequently over the course of time. In view of the clear expression of the Code's managers of an intention to preserve the basis of *Randolph v. Scruggs* as an expressed and integral part of the Bankruptcy Code it relegates entitlement for pre-petition services simply to a consideration of the matter of benefit conferred on the estate.

As related in the memorandum submitted by Mr. Patrick, and undisputed on hearing, the informal creditors' committee was engaged in the beginning of a continuous process which eventuated in the acceptance of a plan of reorganization beneficial to the general creditors. I see no reason to distinguish on the facts known to the Court between the beneficial results of the pre-petition activity as opposed to the post-petition activity of the committee which is admittedly compensable. Given such benefit conferred, Section 503(b)(4) forms the statutory predicate for the reimbursement of reasonable compensation for its employed attorney based on the nature, extent, and value of the services as well as the cost of comparable services as well as reimbursement for necessary expenses incurred. The test accordingly is the same as with respect to any other application of a professional person.

The original application sought allowance of a total of $28,441.50 and reimbursement

of expenses incurred. It acknowledged pre-petition payment of $7,500.00 under the pre-petition arrangements and reimbursement of $2,295.31 expenses then incurred leaving on initial application unpaid compensation of $20,941.50 and unreimbursed expense of $371.18. The time and charges are appropriately documented by attachments to the original application. In addition, a supplemental application has been filed seeking additional compensation of $3,359.00. At the hearing, it appeared that such should be reduced and at the suggestion of the United States Trustee Mr. Patrick voluntarily reduced the amount sought to $2,959.00. Accordingly the Court having determined that the amounts sought are appropriate and allowable:

IT IS ORDERED that the application of Robins, Zelle, Larson & Kaplan should be allowed and having due regard for amounts previously paid or reimbursed to counsel the same is now hereby allowed in the net amount payable of $20,941.50 and $2,979.00, a total of $23,920.50 as and for compensation, and for reimbursement of expenses in the now amount of $371.18.