In re BELL & BECKWITH, Debtor.

Patrick A. McGRAW, Trustee, Plaintiff,

v.

Carl ALLEN, et al., Defendants.

Bankruptcy No. 84–0097.
Related Case 83–0132.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Aug. 1, 1984.

Fuller & Henry, Toledo, Ohio, for plaintiff.

William F. Snyder, Cleveland, Ohio, John J. Callahan, Toledo, Ohio, for defendants.

**MEMORANDUM OPINION
AND ORDER**

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Defendant's Motion to Dismiss and the Plaintiff's Opposition to that Motion. The Court has reviewed the arguments presented by counsel along with the entire record in this case. Based upon that review and for the following reasons the Court finds that the Motion should be DENIED.

## FACTS

The bankruptcy proceeding to which this adversary case relates is the liquidation of a stock brokerage under the provisions of the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* The Plaintiff in this action is the Trustee appointed for that liquidation.

The financial demise of the Debtor-brokerage resulted from the fraudulent activities of Edward P. Wolfram, the managing partner of the brokerage. These activities included the diversion of customer funds and a reinvestment of those funds in a number of diversified enterprises. Among these ventures was Wolfram's formation of a partnership with the Defendant. The business of the partnership involved the purchase and operation of a horse ranch and horse training facility in Ocala, Florida. It also included the purchase of several racing horses.

On February 5, 1983, the customers of the brokerage were declared in need of protection by the United States District Court for the Northern District of Ohio, Western Division. Shortly thereafter, Edward Wolfram and his wife, Zula Wolfram, assigned all of their assets to the brokerage which, in turn, assigned its assets to the Trustee. During the course of the Trustee's liquidation efforts, the Trustee sold to the Defendant the estate's interest in the partnership's horses. The contract of sale included a clause which stated that:

> "Whereas, Buyers desire to purchase and Seller desires to sell certain interests in those horses more specifically described below, pursuant to the terms of this Agreement which the parties agree shall be subject to the exclusive jurisdiction of the United States Bankruptcy Court for the Northern District of Ohio, Western Division ..."

The sale was finalized without incident and was confirmed by this Court. However, on March 30, 1984, the Trustee filed this Adversary Complaint, wherein he seeks, among other remedies, a return of all monies transferred into the partnership by Wolfram.

## LAW

The Motion presently before the Court is entitled a Motion to Dismiss. The Memorandum offered in support of the Motion alludes to an issue upon which this Court could entertain the remedy set forth in the caption of the Motion. That issue is whether or not this Court has personal jurisdiction over the Defendant. However, the primary focus of the Defendant's argument is on the issue of whether or not the venue in which the action is currently located is proper. Inasmuch as it is unclear which of the issues the Defendant would have this Court address, both will be reviewed.

### I

The Defendant argues that because of the absence of any connection between himself and the Northern District of Ohio, this Court is without personal jurisdiction to exercise authority over him. Apparently, and without specifically enumerating the grounds therefore, he contends that there is no provision in the Federal Rules of Civil Procedure which confers personal jurisdiction on this Court, in light of the absence of any contacts with this District. He also argues that the previously cited clause of the sales contract is insufficient for allowing personal jurisdiction on causes of action which do not involve the sale. Accordingly, he contends that the only Count of the Complaint which this Court may hear is the one dealing with the sale of the horses.

This Court is in agreement with the Defendant on the limiting effect of the contract's clause regarding his submission to the jurisdiction of this Court. The terms of the contract appear to express that the intent of the parties was to limit the Defendant's assention to jurisdiction for purposes of disputes arising from the sale. However, the fact that the contract may be limiting in that regard does not necessarily negate other legal grounds upon which personal jurisdiction can be obtained.

It is well settled that a Bankruptcy Court is endowed with *in personam* jurisdiction for litigating all matters which arise in a bankruptcy case. *In re Schack Glass Industries Co., Inc.*, 20 B.R. 967 (Bkcy.S.D.N.Y.1982), *G. Weeks Securities, Inc. v. Navy Orlando Federal Credit Union (In re G. Weeks Securities, Inc.)*, 3 B.R. 215 (Bkcy.W.D.Tenn.1980). The theory of "minimum contacts" upon which personal jurisdiction is customarily established does not apply in bankruptcy cases. *American National Bank & Trust Co. v. Mediplex, Inc. (In re Med General, Inc.)*, 17 B.R. 15 (Bkcy.D.Minn.1981). This deviation from the normal requirements is founded on a statutory rule designed to reflect the totality of *in personam* and *in rem* jurisdiction that may be exercised by a Bankruptcy Court. The purpose of this rule is to avoid the fragmentation of litigation that is often involved in bankruptcy estates. *Whippany Paper Board Co., Inc. v. Victory Container Corp. (Matter of Whippany Paper Board Co., Inc.)*, 15 B.R. 312 (Bkcy.D.N.J.1981). Therefore, it appearing that the Defendant has been properly served with notice of this litigation, and that this Court's authority over the Defendant is not predicated upon his having any connection with this District, it must be concluded that this Court has *in personam* jurisdiction over him for purposes of bankruptcy proceedings.

The only remaining question regarding jurisdiction is whether or not the breadth of this Court's authority is available in actions under 15 U.S.C. § 78aaa *et seq.* Under the provisions of 15 U.S.C. § 78eee(B)(2)(A), which reads in pertinent part:

"Upon the filing of an application with a court for a protective decree with respect to a debtor, such court—

... except as inconsistent with the provisions of this chapter, shall have the jurisdiction, powers, and duties conferred upon a court of the United States having jurisdiction over cases under Title 11..."

the United States District Court with which an application is filed is conferred with the same *in personam* jurisdictional authority that is available to the Bankruptcy Court. Once a protective decree has been issued, the Bankruptcy Court assumes, for purposes of the liquidation, all *in personam* jurisdictional authority exercised by the District Court. 15 U.S.C. § 78eee(B)(4). Therefore, it must be concluded that by operation of law, the Bankruptcy Court maintains the *in personam* jurisdictional powers available in cases brought under Title 11 for actions under 15 U.S.C. § 78aaa *et seq.*

## II

Addressing the Defendant's arguments on the issue of venue, it is doubtful whether this Court could dismiss an action based upon a finding that venue was improper. *See, Herman Cantor Corp. v. Cattle King Packing Co., Inc. (In re Herman Cantor Corp.)*, 22 B.R. 604 (Bkcy.E.D.Va.1982). However, this Court may transfer a case to another venue when the interests of justice and the convenience of the parties would be better served. 28 U.S.C. § 1477. When making those considerations, the Court must consider:

"1. the relative ease of access to sources of proof;

2. availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses;

3. the enforceability of judgment if one is obtained;

4. relative advantages and obstacles to fair trial;

5. a local interest in having localized controversies decided at home;

6. a trial in the state the law of which will govern the action."

*International Coins & Currency, Inc. v. Names Unlimited (In re International Coins & Currency, Inc.)*, 18 B.R. 79 (Bkcy.D.Vt.1982). Such a change may only be ordered if the movant bears the burden of showing that the balance of these interests strongly favors granting a change of venue. *B.J. McAdams, Inc. v. Boggs*, 426 F.Supp. 1091 (E.D.Pa.1977).

■ Applying these criteria to the case at hand, it is apparent that contrary to the assertions of the Defendant, the allegedly fraudulent transactions occurred in Ohio, rather than Florida. The events which give rise to the Plaintiff's allegations of constructive trust transpired from the diversion of customer funds. Inasmuch as the Debtor's only office is located in Toledo, Ohio, it is reasonable to conclude, in the absence of evidence to the contrary, that the fraudulent conduct took place in Ohio. Accordingly, Ohio law would be applicable and controlling. It should also be noted that the Plaintiff's allegations of fraudulent transfer made under the Bankruptcy Code, thereby negating any consideration of applicable law on the choice of venue. Therefore, as to the consideration of governing law, Ohio would be the proper forum.

It would also appear that Ohio would prove to be the venue most accessible to the evidence that is likely to be offered. As previously indicated, the Debtor maintained its only office in Toledo, Ohio. All documentation which traces the diversion of funds is located in that vicinity. This Court recognizes, from its previous experience in this liquidation, the voluminous nature of that evidence. While the Defendant has indicated that a large quantity of documentation located in Florida will be necessary for his defense, there has been no showing that the burden to be placed on him will be greater than or equal to the burden he would have the Plaintiff assume. Therefore, it must be concluded that on this point the Defendant has not sustained his burden of showing Florida to be a more convenient forum.

As for the remaining criteria, there do not appear to be any relative advantages or obstacles to a fair trial in either venue, with one exception. Because of the complexity and volume of the transactions involved, it would better serve the goal of judicial economy to prosecute the case before a Court that is already familiar with the events which lead to the filing of this Complaint. It would also prevent the fragmentation of litigation in the liquidation effort, thereby, better serving the administration of the estate. Therefore, in this respect, an Ohio venue would continue to appear more favorable.

Finally, it does not appear as though an Ohio venue will present any unfair difficulties for the administration of the case. The Complaint seeks a money judgment against the Defendant. Such a judgment, if it were to be forthcoming, would be enforceable through the routine methods of levy and execution. There also does not appear, in the absence of evidence or substantiated argument to the contrary, to be any barriers to obtaining witnesses. At the present time, it appears as though the costs and burdens that would be placed on either party for having to appear would be approximately equal. Without any showing of how the Defendant would be prejudicially harmed by requiring him to conduct his defense in Ohio, it must be held that as to this consideration, he has failed to sustain his burden of proof.

Based upon the foregoing analysis, it must be concluded a change of venue would not be proper. There has been no demonstration of any factors which would justify the granting of such a change. There has also been no showing of any grounds that would preclude this Court's exercise of personal jurisdiction over the Defendant. Therefore, there do not appear to be any grounds argued by the Defendant, either directly or indirectly, upon which this Court should grant the Defendant's Motion.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Defendant's Motion to Dismiss be, and is hereby, DENIED.